**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-10152-CIV-MARTINEZ**

MIGUEL PEREZ-SOTO,

Petitioner,

v.

FIELD OFFICE DIRECTOR, MIAMI FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondent.
_______________________________________/

**ORDER**

**THIS CAUSE** is before the Court on Petitioner Miguel Perez-Soto's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), [ECF No. 1]. In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondent to show cause why the Petition should not be granted. (*See* [ECF No. 4]). Respondent filed its Response [ECF No. 5] on August 21, 2026 ("Response"). The Court has considered the briefing, the record, and the relevant law and is otherwise fully advised. For the reasons set forth herein, the Petition is **GRANTED IN PART**.

## I. BACKGROUND

Petitioner Miguel Perez-Soto is a thirty-year-old native and citizen of Cuba. (Pet. ¶ 17). Petitioner entered the United States on February 16, 2022, and was detained by U.S. Customs and Border Protection ("CBP"), who then issued a Notice to Appear. (Pet. ¶¶ 18–19). CBP twice determined that Petitioner did not present a danger to the community nor a flight risk, and following the second determination, Petitioner was released on an Order of Release on Recognizance ("OREC"). (*See* Pet. ¶¶ 20–22). The OREC listed several conditions with which

Petitioner was to comply, one condition being that Petitioner was required to report to the Miami Sub Office in Miramar, Florida, on April 20, 2022. (Pet. ¶ 24). Petitioner did so. (Pet. ¶ 24). Nine days later, Petitioner filed an asylum application, which remains pending with United States Citizenship and Immigration Services ("USCIS"). (Pet. ¶ 25). Since, "Petitioner has maintained a clean criminal record (zero arrests), has demonstrated stability within society, and has fully complied with the laws and requirements of the United States." (Pet. ¶ 26). And according to Petitioner, he has never violated the terms of his OREC. (Pet. ¶ 28).

On August 12, 2026, however, Petitioner was on his way to work in Marathon, Florida, when he was stopped by CBP officers and asked about his status. (Pet. ¶ 29). Petitioner was subsequently arrested and transported to the Miramar office of Immigrations and Customs Enforcement ("ICE"), then to the Broward Transitional Center in Pompano Beach, Florida, where he remains detained. (Pet. ¶ 29). Petitioner alleges:

> At the time of his re-detention, neither CBP nor ICE provided Petitioner any notice of the reason for revoking his release, any hearing, or any opportunity to be heard. Nor did Respondent identify any change in circumstances, any violation of the conditions of his release, any new arrest, or any individualized finding of flight risk or dangerousness, that would justify revoking the OREC.

(Pet. ¶ 29). Moreover, Petitioner states that "[b]oth CBP's and ICE's determinations—on February 20th and 21st, 2022, respectively—that Petitioner is neither a danger to the community nor a flight risk, have not materially changed." (Pet. ¶ 30).

Accordingly, Petitioner now seeks his immediate release from custody on two grounds: (1) ICE lacked the authority to re-detain him in the absence of any change in circumstances; and (2) the revocation of his OREC without providing him notice and a meaningful opportunity to respond violated his procedural due process rights under the Fifth Amendment and violated the Administrative Procedure Act. (*See generally* Pet.). Respondents contend that the Court lacks

subject matter jurisdiction over Petitioner's claims and that Petitioner's continued detention is lawful and constitutional because "an order of recognizance can be revoked at any time." (Resp. 7).

## II. LEGAL STANDARD

District courts are authorized to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). "The typical remedy for such detention is, of course, release." *Id.* (citation omitted). "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004); other citations omitted). Further, the Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## III. DISCUSSION

Petitioner seeks a writ of habeas corpus for his immediate release from custody, and Respondents oppose. The Court addresses the relevant arguments below.

### A. Subject Matter Jurisdiction

The Court begins with the threshold issue of jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Petitioner proceeds under 28 U.S.C. § 2241, but Respondents argue 8 U.S.C. § 1252(g) applies, depriving the Court of jurisdiction over this case. (*See* Resp. 7–10).

As relevant here, § 1252(g) strips courts of jurisdiction over actions "arising from" the decision or action by the Attorney General to "execute removal orders against any alien[.]" 8 U.S.C. § 1252(g) (alteration added).

Here, however, § 1252(g) is inapplicable. Ultimately, Petitioner does not challenge "ICE's ability to detain him in order to deport him. Rather, he challenges ICE's ability to hold him in detention without adequate process for weeks and months on end." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 153 (W.D.N.Y. May 2, 2025) (concluding subject matter existed (citations omitted)). In other words, Petitioner is not challenging the legality or execution of the removal order but rather is challenging the improper revocation of his OREC and the constitutionality of his continued detention. Such a claim targets the underlying legal bases of ICE's actions, falling squarely within the subject matter jurisdiction of this Court.

**B. Due Process Claims: OREC Revocation and Re-Detention**

Petitioner argues his Fifth Amendment right to due process was violated when his OREC was suddenly revoked without prior notice or an opportunity to be heard, and in the absence of any individualized change in circumstances justifying such revocation. Respondent does not sufficiently address Petitioner's Fifth Amendment arguments and argues merely that "an order of recognizance can be revoked at any time." (*See* Resp. 7).

When an alien is on supervised release and the 90-day removal period specified in 8 U.S.C. § 1231 has passed, ICE may detain the alien by following its own regulations, set out in 8 C.F.R. §§ 241.4 and 241.13. *See Ceesay*, 781 F. Supp. 3d 159–66 (discussing § 241.4); *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (discussing § 241.13). And "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). "[A]fter his or

her return to [ICE] custody" the alien must be "afforded an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* "If the alien is not released from custody following the informal interview," ICE must then commence "[t]he normal review process . . . with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." *Id.* § 241.4(l)(3).

"The notice and informal interview requirement appears in § 241.4(1)(1), but not § 241.1(l)(2). However, courts have 'interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation' — meaning that the notice and informal interview requirement stated in § 241.4(1)(1) applies to revocation under § 241.4(1)(2)." *Grigorian*, 2025 WL 2604573, at *6 (quoting *Ceesay*, 781 F. Supp. 3d at 163 (collecting cases)); *see also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (Sotomayor, J., statement respecting the Court's disposition of the application) (stating that under 8 C.F.R. § 241.4(l), "in order to revoke conditional release the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification'"); *Zhu v. Genalo*, ___ F. Supp. 3d ___, 2025 WL 2452352, at *6 (S.D.N.Y. Aug. 26, 2025) ("[P]aragraph (*l*) sets forth a unified set of procedures for the revocation of removal."); *but see Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) (finding that "it does not appear that Petitioner was entitled notice or an informal interview" because Petitioner's OSUP was revoked pursuant to § 241.4(l)(2), not § 241.4(l)(1)).

Importantly, § 241.4(l) requires that a petitioner "be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.4(l)(1). "The undisputed purpose of this requirement is to

give the non-citizen an opportunity to respond to or otherwise contest the reasons for the revocation." *Zhang v. Genalo*, ___ F. Supp. 3d ___, 2025 WL 3733542 (E.D.N.Y. Dec. 28, 2025).

With this framework in mind, the Court addresses whether ICE had a valid basis to revoke Petitioner's release and detain him. On this issue, *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025), is instructive. There, the Government revoked an order of supervised release and detained an immigrant subject to a final order of removal, and the district court found that "[t]he process afforded" to the petitioner concerning the revocation of his order of supervised release and subsequent detention "fail[ed] to comply with ICE's own regulations or comport with traditional notions of due process." *Id.* at *9. Here, however, the deficiencies are far starker than what confronted the court in *Grigorian*.

In *Grigorian*, the Government issued the petitioner notice indicating that he would "promptly be afforded an informal interview," at which he would "be given an opportunity to respond to the reasons for the revocation." *Id.* at *2. Here, Respondent issued no such notice in any form. More significantly, in *Grigorian*, the Government did conduct an interview––albeit one the court found procedurally defective. *See id.* at *7–8. Here, no such interview took place. At the defective interview in *Grigorian*, the Government offered at least a bare bones rationale for the petitioner's detention—that the petitioner was being detained to facilitate his removal from the U.S. *Id.* at *7. Here, the Government has apparently never supplied any rationale for Petitioner's detention. (*See* Resp. 7 ("Here, Petitioner was arrested and taken into custody on February 16, 2022. . . . Petitioner was released on an order of recognizance on same date. . . . ICE ERO then redetained Petitioner on August 10, 2026. . . . Since an order of recognizance can be revoked at any time, Petitioner's order of recognizance was correctly revoked, and Petitioner is properly detained under INA § 241." (cleaned up; citations omitted))). Finally, the petitioner in *Grigorian*

had been convicted of six counts of mail and wire fraud, *id.* at *1, whereas here, to the Court's knowledge, Petitioner has no criminal record.

Thus, the process afforded to Petitioner falls far short of even the process afforded to petitioner in *Grigorian*, which the court nonetheless found constitutionally defective. The opportunity to contest one's detention through the procedures secured under the laws of Congress and ICE's regulations "is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands. *Grigorian*, 2025 WL 2604573, at *9 (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021)). Petitioner has been deprived of that opportunity.

In any event, even if Petitioner were not entitled to the procedural protections afforded to immigrants under 8 C.F.R. § 241.13 and § 241.4, Petitioner would be entitled to release pursuant to the Due Process Clause. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has been in custody for fifteen days (and counting), "without ever having received a meaningful opportunity to be heard or to contest the basis for his re-detention." *Id.* Remarkably, Respondent has essentially nothing to say on this issue, besides the naked, unsupported assertion of ICE's authority to "revoke[] [an Order of Release on Recognizance] at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained." (Resp. 7; *see also id.* ("Since an order of recognizance can be revoked at any time, Petitioner's order of recognizance was correctly revoked . . . .")). Perhaps because of that stark assertion of authority, Respondent has never argued—let alone put forth evidence to suggest—that the revocation of Petitioner's Order of Release on Recognizance

complied with the requirements of the Fifth Amendment or its own regulations. In fact, Respondent's brief does not use the phrase "due process" even once. (*See generally* Resp.). That complete disengagement from the constitutional heft of Petitioner's challenge speaks volumes.

Accordingly, the Court finds that the process by which Respondent revoked Petitioner's Order of Release on Recognizance and subsequently detained him violates applicable statutory law and regulations as well as the Due Process Clause of the Constitution in line with the *Matthews v. Eldridge* analysis conducted by other courts in this District. *See, e.g.*, *Mora Arellano v. Warden Federal Bureau of Prisons et al.*, 26-20044-CIV-ALTONAGA (Jan. 23, 2026), ECF No. 10 at 8–12 (Altonaga, C.J.). "The typical remedy for [unlawful] detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (alteration added; citation omitted); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody." (alteration added)). As "[c]ourts around the country have concluded," that relief is appropriate here. *See Grigorian*, 2025 WL 2604573, at *10 (collecting cases); *see also Mora Arellano*, 26-20044-CIV-ALTONAGA, ECF No. 10 at 12 ("It follows that Petitioner is entitled to immediate release from unlawful detention and to the immediate restoration of the conditions of the Recognizance Order that were in effect prior to his re-detention.").

**C. Attorney's Fees and Costs**

The Court declines to address Petitioner's perfunctory request for costs and attorney's fees, as he supplies no basis for such an award. (*See* Pet. 16); *see In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 13-md-2495, 2018 WL 2929831, at *9 (N.D. Ga. June 8, 2018) (finding plaintiff was not entitled to attorney's fees where he "provided no viable statutory or contractual basis for an award of attorneys' fees, and the [c]ourt [could] discern no basis from the

record for awarding attorneys' fees other than [a] conclusory request in the" complaint (citation omitted; alterations added)).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Petition for Writ of Habeas Corpus **[ECF No. 1]** is **GRANTED IN PART**. The Petition is **DENIED** only as to Petitioner's request for attorneys' fees.

2. Respondents shall release Petitioner from custody **IMMEDIATELY**, pursuant to the terms of Petitioner's prior OREC.

3. Respondents shall file a notice with the Court **within 48 hours** confirming Petitioner's release in compliance with this Order.

4. The Clerk is directed to **CLOSE** this case.

5. The Court retains jurisdiction to enforce this Order.

**DONE AND ORDERED** in Miami, Florida, this 25 day of August 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc: all counsel of record